**THE HONORABLE RICHARD A. JONES**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID V. MYERS and SHIVA Y. STEIN, derivatively on behalf of STARBUCKS CORPORATION, | CASE NO.: CV16-1580-RAJ |
| Plaintiffs, | **INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND UNJUST ENRICHMENT** |
| v. | |
| TROY ALSTEAD, MARY N. DILLON, ROBERT M. GATES, MELLODY HOBSON, KEVIN R. JOHNSON, SCOTT MAW, JOSHUA COOPER RAMO, HOWARD SCHULTZ, JAMES G. SHENNAN, JR., CLARA SHIH, JAVIER G. TERUEL, MYRON E. ULLMAN, III, CRAIG E. WEATHERUP, | NOTE ON MOTION CALENDAR: April 28, 2017 |
| Defendants, | ORAL ARGUMENT REQUESTED |
| and | |
| STARBUCKS CORPORATION, | |
| Nominal Defendant. | |

**WILSON SONSINI GOODRICH & ROSATI, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARDS ....................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.      PLAINTIFFS' CLAIMS DO NOT STATE A CLAIM UNDER WASHINGTON LAW ................................................................................................. 5

II.     PLAINTIFFS' CLAIMS AGAINST DIRECTORS ARE EXCULPATED BY THE COMPANY'S ARTICLES OF INCORPORATION ..................................... 7

III.    THE STATUTE OF LIMITATIONS ON PLAINTIFFS' CLAIMS HAS EXPIRED ............................................................................................................... 8

IV.     PLAINTIFFS' RELIANCE ON COLLECTIVE ALLEGATIONS IS IMPERMISSIBLE .......................................................................................... 9

V.      PLAINTIFFS' ALLEGATIONS OF INADEQUATE OVERSIGHT OF THE COMPANY'S EUROPEAN TAX POLICY ARE CONCLUSORY AND DEMONSTRABLY INCORRECT ............................................................ 11

VI.     PLAINTIFFS' VAGUE DISCLOSURE CLAIMS DO NOT SATISFY RULE 9(B) .......................................................................................................... 14

VII.    PLAINTIFFS HAVE NOT SUFFICIENTLY PLED DAMAGE TO STARBUCKS ............................................................................................... 16

CONCLUSION .................................................................................................................. 18

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT          -i-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................................2

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.,*
    61 Wn. App. 151, 810 P.2d 12 (1991)...........................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................................2

*Davis v. Cox,*
    180 Wn. App. 514, 325 P.3d 255 (2014).........................................................................3

*Davis v. Cox,*
    183 Wn.2d 269, 351 P.3d 862 (2015) ............................................................................3

*Destfino v. Reiswig,*
    630 F.3d 952 (9th Cir. 2011) .......................................................................................14

*Dollens v. Zionts,*
    2002 U.S. Dist. LEXIS 13511 (N.D. Ill. July 22, 2002)................................................16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) .........................................................................................2

*Gagliardi v. TriFoods Int'l, Inc.,*
    683 A.2d 1049 (Del. Ch. 1996).....................................................................................11

*Gantler v. Stephens,* 965 A.2d 695 (Del. 2008) .............................................................6

*Holmes v. Sec. Inv'r Protection Corp.,*
    503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)..............................................17

*Hudson v. Condon,*
    101 Wn. App. 866, 6 P.3d 615 (2000)............................................................................8

*Humphrey Indus., Ltd. v. Clay St. Assocs., LLC,*
    170 Wn.2d 495, 242 P.3d 846 (2010) .............................................................................6

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.,*
    2013 U.S. Dist. LEXIS 59783 (S.D.N.Y. Apr. 25, 2013)................................................8

*In re Caremark Int'l Inc. Deriv. Litig.,*
    698 A.2d 959 (Del. Ch. 1996)..................................................................................11, 12

*In re China Auto. Sys., Inc. Deriv. Litig.,*
    2013 WL 4672059 (Del. Ch. Aug. 30, 2013) ...............................................................14

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT    -ii-
CASE NO.: CV16-1580-RAJ

**WILSON SONSINI GOODRICH & ROSATI, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*In re Citigroup S'holders Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009) ................................................................................12

*In re Cornerstone Therapeutics*,
   115 A.3d 1173 (Del. 2015) .............................................................................9, 10

*In re Cray Inc.*,
   431 F. Supp. 2d 1114 (W.D. Wash. 2006) ..........................................................16, 17

*In re Hansen Nat. Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................................14

*In re ITT Corp. Deriv. Litig.*,
   653 F. Supp. 2d 453 (S.D.N.Y. 2009) ...................................................................9

*In re Metro. Secs. Litig.*,
   532 F. Supp. 2d 1260 (E.D. Wash. 2007) ..............................................................14

*In re Symbol Techs. Sec. Litig.*,
   762 F. Supp. 510 (E.D.N.Y. 1991) .......................................................................16

*In re United Telecomms. Sec. Litig.*,
   1993 U.S. Dist. LEXIS 4749 (D. Kan. Mar. 4, 1993) ............................................16, 18

*Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C.*,
   109 Wn. App. 655, 37 P.3d 309 (2001) ...................................................................8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..............................................................................3

*Lyondell Chem. Co. v. Ryan*,
   970 A.2d 235 (Del. 2009) ....................................................................................12

*Mendelovitz v. Vosicky*,
   40 F.3d 182 (7th Cir. 1994) ..................................................................................17

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) ....................................................................3

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................................3

*Nissen v. Lindquist*,
   2017 U.S. Dist. LEXIS 480 (W.D. Wash. Jan. 3, 2017) ............................................10

*Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 535 P.2d 137 (1975) ...........................3

*Ramziddin v. Monmouth Cty. Sheriff Dep't*,
   2010 U.S. Dist. LEXIS 42798 (D.N.J. Apr. 30, 2010) ...............................................9

*REFCO Grp. Ltd., v. Cantor Fitzgerald, L.P.*,
   2014 U.S. Dist. LEXIS 79708 (S.D.N.Y. June 10, 2014) ..........................................10

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT     -iii-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Scott v. Trans-Sys. Inc.*,
    148 Wn.2d 701, 64 P.3d 1 (2003) ...........................................................................3

*Smith v. Van Gorkom*,
    488 A.2d 858 (Del. l985) ........................................................................................6

*Sollberger v. Wachovia Secs, LLC*,
    2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010) .......................................9

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) ........................................................................11, 12, 13

*SPEAA v. Boeing Co.*,
    139 Wn.2d 824, 991 P. 2d 1126(2000) ...................................................................8

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ..............................................................................2, 3

*Stone ex rel. AmSouth Bancorp. v. Ritter*,
    911 A.2d 362 (Del. 2006) ......................................................................................12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................3

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) .............................................................................10

## STATUTES

14 C.F.R. 210.4-08(h) .....................................................................................................15

RCW 4.16.080(2) ..............................................................................................................8

RCW 23B.08.300 ......................................................................................................5, 6, 8

RCW 23B.08.310 ..............................................................................................................7

RCW 23B.08.320 ....................................................................................................6, 7, 10

RCW 23B.08.420 ......................................................................................................5, 10

## RULES

Rule 9(b) .........................................................................................................1, 3, 5, 14

Rule 12(b)(6) ................................................................................................................1, 2

Rule 23.1 ..................................................................................................................1, 2, 13

## MISCELLANEOUS

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1248
    (3d ed. 2015) ...........................................................................................................9

Individual Defs' Motion to Dismiss Complaint
Case No.: CV16-1580-RAJ

-iv-

**Wilson Sonsini Goodrich & Rosati, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Robert A. Kutcher, *Breach of Fiduciary Duties in Business Torts Litigation* 1
    (ABA 2004) ....................................................................................................7

Strine et al., *Delaware Corporations Law and the Model Business Corporations
    Act, A Study in Symbiosis*, 74 Law & Contemp. Probs. 107, 116 (2011) ............6

W. Fletcher, *Private Corporations* § 1039 (perm. ed. 1974).........................................3

Washington Business Corporation Act, 2 WASH. S.J., 51ST LEG. (1989)..................5, 6, 7

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT     -v-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Pursuant to Rule 12(b)(6) Defendants Troy Alstead, Mary N. Dillon, Robert M. Gates, Mellody Hobson, Kevin R. Johnson, Scott Maw, Joshua Cooper Ramo, Howard Schultz, James G. Shennan, Jr., Clara Shih, Javier G. Teruel, Myron E. Ullman, III, and Craig E. Weatherup (collectively, the "Individual Defendants" or "Defendants") move to dismiss Plaintiffs' Complaint for Breach of Fiduciary Duties and Unjust Enrichment.[1]

## INTRODUCTION[2]

Plaintiffs served demands on Starbucks' Board of Directors requesting that it pursue legal action against certain of the Company's current and former directors and officers in connection with the Company's European Union tax policy. The Board refused Plaintiffs' demands after concluding that the demands did not demonstrate violation of any duties by a Starbucks director or officer, did not show a failure to make proper business judgments on behalf of the Company, and because pursuing the demanded litigation was not in the best interests of Starbucks. Plaintiffs then instituted the present suit, in which they seek to assert these claims on behalf of the Company.

The Complaint should be dismissed because it: (1) does not assert claims cognizable under Washington law; (2) alleges claims against the Company's directors that are exculpated under the Company's articles of incorporation, as permitted by Washington law; (3) alleges claims that are barred by the applicable statutes of limitations; (4) fails to differentiate its allegations as to each of the thirteen defendants; (5) contains allegations that mistake negative business effects with a lack of oversight by the Board or management by the officers; (6) contains disclosure allegations that fail to comply with Rule 9(b); and (7) makes damages

---

[1] Defendants Mary N. Dillon, Robert M. Gates, Mellody Hobson, Joshua Cooper Ramo, James G. Shennan, Jr., Clara Shih, Javier G. Teruel, Myron E. Ullman, III, and Craig E. Weatherup are all non-management, outside directors of Starbucks. Defendants Howard Schultz and Kevin R. Johnson are the CEO and President/COO of Starbucks and also serve on the Starbucks' Board of Directors. Defendants Troy Alstead and Scott Maw are current and former officers of the Company and do not serve on the Company's Board of Directors. Former Senator Bill Bradley serves on the Starbucks' Board but is not a defendant in this action.

[2] If the Court grants Starbucks' Rule 23.1 motion to dismiss, filed concurrently at ECF No. 16, the Court need not rule on this motion.

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT     -1-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

allegations that are too conclusory or speculative to have flowed from the allegedly wrongful acts.

## FACTUAL BACKGROUND

The relevant facts are set forth at length in Nominal Defendant Starbucks Corporation's (the "Company") concurrently filed brief in support of its motion to dismiss.[3] ECF No. 16. Plaintiffs assert that Starbucks implemented an aggressive "tax avoidance scheme" that was eventually the subject of both a parliamentary inquiry in the United Kingdom in 2012 and a state aid inquiry by the European Commission (the "EC"), the latter of which culminated in an October 2015 decision by the EC striking down a Netherlands tax agreement favorable to Starbucks.

## LEGAL STANDARDS

The Court should grant a Rule 12(b)(6) motion in any case where a plaintiff fails to allege facts stating a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiffs must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not assume the truth of allegations that "simply recite the elements of a cause of action," and must identify and disregard allegations that are merely legal conclusions. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and thus should be dismissed. *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotations and citations omitted). In addition, courts are "not required to accept as true conclusory allegations which are

---

[3] The Individual Defendants join in the Company's Rule 23.1 motion, and separately move for dismissal under Rule 12(b)(6), because even if Plaintiffs were to sufficiently allege standing and a wrongful refusal of their demands under Rule 23.1, their claims should be dismissed for other reasons.

**WILSON SONSINI GOODRICH & ROSATI, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Corporate directors and officers are protected by the business judgment rule, a presumption which precludes liability for transactions in which "(1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *Scott v. Trans-Sys. Inc.*, 148 Wn. 2d 701, 709, 64 P.3d 1 (2003). Directors and officers are presumed to act in good faith in compliance with their duties. *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 498-99, 535 P.2d 137 (1975) ("[T]he law will not hold directors liable for honest errors, for mistakes of judgment, when they act without corrupt motive and in good faith. . .") (quoting W. Fletcher, *Private Corporations* § 1039 (perm. ed. 1974)); *see also Davis v. Cox*, 180 Wn. App. 514, 535, 325 P.3d 255 (2014) ("The business judgment rule cautions against courts substituting their judgment for that of the board of directors, absent evidence of fraud, dishonesty, or incompetence."), *rev'd on other grounds*, 183 Wn.2d 269, 351 P.3d 862 (2015).

Additionally, under FRCP 9(b) "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted). This heightened pleading requirement applies to all allegations of fraudulent conduct, whether or not fraud is a necessary element of a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). "It is well-settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement." *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (same). Thus, Plaintiffs' claims of "false and misleading statements" (*i.e.*, misrepresentations) must meet Rule 9(b)'s standards. Compl. ¶¶ 69-75, 95-96.[4]

---

[4] Citations to "Compl." are to the Complaint for Breach of Fiduciary Duties and Unjust Enrichment. (Dkt. 1). Citations to "PEx. __" are to exhibits attached to the Complaint. Citations to "DEx. __" are to the exhibits attached to the concurrently filed Declaration of Elon B. Slutsky ("Slutsky Decl.") dated January 19, 2017.

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT          -3-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# ARGUMENT

The Complaint suffers from several deficiencies, each of which is an independent basis for dismissal. The Complaint asserts breaches of "fiduciary" duties of directors and officers not recognized by Washington law. The Complaint alleges claims against the Company's directors that are exculpated by the Company's articles of incorporation. The statute of limitations has run on Plaintiffs' claims. The Complaint impermissibly fails to differentiate its allegations as to each of the thirteen Individual Defendants, despite their varying roles at the Company and terms of service, some of which do not match up temporally with the underlying allegations of improper conduct.

Moreover, the Complaint's two core substantive allegations do not state a claim upon which relief can be granted. <u>First</u>, Plaintiffs allege that Defendants violated their corporate duties as Starbucks officers and directors by creating allegedly "aggressive tax avoidance schemes" in the European Union, or by allowing these tax avoidance schemes to continue. Compl. at 12-13. Plaintiffs claim that the alleged tax "schemes" ultimately backfired, damaging Starbucks' reputation in the UK and leading to the EC Decision, which required the Netherlands to collect $34 million from Starbucks in unpaid corporate taxes. Compl. ¶¶ 48-68. This claim however, mistakes allegations of negative business developments for the required allegations of failures of Defendants' oversight or management of the Company. <u>Second</u>, the Complaint claims that Defendants are responsible for misleading statements because "the [Securities and Exchange Commission] Forms 10-K Defendants caused the Company to file with the SEC since 2008 have been false and misleading." Compl. ¶ 69. However, this claim, which must be pled in accordance with FRCP 9(b), lacks particularity, is internally inconsistent and is contradicted by the facts alleged in the Complaint.

Finally, Plaintiffs' damages allegations are either conclusory or seek to recover speculative damages to Starbucks' reputation that do not flow from the wrongful acts alleged in the Complaint.

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT    -4-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## I. PLAINTIFFS' CLAIMS DO NOT STATE A CLAIM UNDER WASHINGTON LAW

Plaintiffs' first Claim is for "breach of fiduciary duties" and makes reference to a variety of "fiduciary" duties Defendants allegedly violated. Compl. ¶¶ 88-101. However, Washington law does not premise director or officer liability on "fiduciary" duties. Thus, the Complaint does not state a claim and should be dismissed.

Starbucks is a Washington corporation. Compl. ¶ 27. The duties and standards of conduct for directors of a Washington corporation are governed by the Washington Business Corporation Act ("WBCA"), which was enacted in 1989. RCW Ch. 23B. The WBCA sets forth the "general standards" of conduct for directors and officers of Washington corporations in RCW 23B.08.300:

> (1) A director shall discharge the duties of a director, including duties as member of a committee:
> (a) In good faith;
> (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
> (c) In a manner the director reasonably believes to be in the best interests of the corporation.

RCW 23B.08.300(1); RCW 23B.08.420 (same standard for officers). The WBCA also states that a director or officer "is *not* liable for *any action* taken as a [director or officer], or *any failure to take any action*, if the [director or officer] performed the duties of the [director or officer's] office in compliance with [RCW 23B.08.300; RCW 23B.08.420]." RCW 23B.08.300(4) (for directors, emphasis added); RCW 23B.08.420(4) (for officers, emphasis added). The WBCA's official legislative history states that these provisions are "self-executing," and "exoneration from liability is automatic." WBCA Leg. Hist. at 3044[5] (Comment to RCW 23B.08.300). Thus, "a director is not liable for injury or damage caused by the director's decision, no matter how unwise or mistaken it may turn out to be, if in performing the director's duties the director met the requirements of [Section 08.300]." *Id*. at 3042 (Comment to RCW 23B.08.300). The same is equally true for officers. *See* RCW 23B.08.420(4).

---

[5] Comments, Washington Business Corporation Act, 2 WASH. S.J., 51ST LEG. (1989) (hereinafter "WBCA Leg. Hist.")

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT            -5-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Because directors' and officers' duties are explicitly set out in the WBCA, a director or officer's duties under the WBCA are not defined as "fiduciary duties." The distinction between the duties under the WBCA and the concept of fiduciary duty (as that concept is used in other jurisdictions) is not merely a matter of semantics. To the contrary, the legislative history of the WCBA demonstrates that the Washington State legislature had concrete and practical reasons for eschewing liability for breaches of "fiduciary duties." <u>First</u>, Section 08.300 "does not use the term 'fiduciary' in the standard for directors' conduct, because that term could be confused with the unique attributes and obligations of a fiduciary imposed by the law of trusts, some of which are not appropriate for directors of a corporation." WBCA Leg. Hist. at 3042 (Comment to Section 08.320). <u>Second</u>, the WBCA official legislative history notes the intent to create clearer standards for Washington director and officer liability than those developed in Delaware's courts and legislature following the landmark decision in *Smith v. Van Gorkom*, 488 A.2d 858 (Del. l985), *overruled on other grounds, Gantler v. Stephens*, 965 A.2d 695 (Del. 2008); *see* WBCA Leg. Hist. at 3045 (Comment to Section 08.320) (citing *Smith v. Van Gorkom*). Thus, the WBCA drafting committee "concluded that 'breach of fiduciary duty' is not a clearly defined term, and thus might lead to litigation over its meaning or to subterfuges." WBCA Leg. Hist. at 3046 (Comment to Section 08.320) (noting that Section 08.320 treats "conduct as a director," rather than ill-defined "fiduciary duties.")[6]

A Washington director or officer also has no "duty of loyalty" independent of the duties enumerated in the WBCA. Thus the WBCA's drafters explicitly excluded the "duty of loyalty" as it exists under the law of other jurisdictions. *Id*; *see also* WBCA Leg. Hist. at 3457

---

[6]The limitation of directors' and officers' WBCA duties to "bright line" statutory obligations in place of the more general "fiduciary standards" is also consistent with the philosophy underlying the Model Business Corporations Act ("MBCA") drafted by the American Bar Association upon which the WBCA is "largely based," *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 170 Wn.2d 495, 504 n.9, 242 P.3d 846 (2010) (en banc); *see also* WBCA Leg. Hist. at 2983 (noting that WBCA was drafted in "substantial reliance" on the MBCA and "the purposes it is intended to serve [and] the principles under which the [MBCA] was prepared."). The WBCA approach reflects a "propensity to build bright-line rules into the statute in an attempt to create greater certainty." Strine et al., *Delaware Corporations Law and the Model Business Corporations Act, A Study in Symbiosis*, 74 Law & Contemp. Probs. 107, 116 (2011); *see also* WBCA Leg. Hist. at 3057 (Comment to Section 08.700-08.730) ("[s]ome observers . . . argue that a bright-line approach is inferior to a statement of broad principles. But the legislative draftsman who chooses to suppress marginal anomalies by resorting to generalized statements of principle will pay a cost in terms of predictability.").

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT
CASE NO.: CV16-1580-RAJ

-6-

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

(Introductory Comment to Sections 08.700-08.730) (WBCA 08.700-730 is a statutory treatment of the "substantive content" of the duty of loyalty).[7]

As a result, Plaintiffs' claims for breach of "fiduciary duty" should be dismissed in their entirety against the Defendants because they are not pled in accordance with Washington law.

## II. PLAINTIFFS' CLAIMS AGAINST DIRECTORS ARE EXCULPATED BY THE COMPANY'S ARTICLES OF INCORPORATION

The WBCA allows Washington corporations to further limit the liability of their directors by exculpating the directors of potential liability by means of a provision in the company's articles of incorporation. RCW 23B.08.320 permits a corporation to eliminate director liability for monetary damages to the corporation and its shareholders in all but the extremely limited circumstances of (1) "intentional misconduct," (2) a "knowing violation of law," (3) an "unlawful distribution" in violation of RCW 23B.08.310, or (4) "any transaction from which the director will personally receive a benefit in money, property, or services to which the director is not legally entitled." Article 9 of Starbucks' Restated Articles of Incorporation includes an exculpation provision limiting the liability of Starbucks' directors to the full extent allowed by RCW 23B.08.320. DEx 7. As a result, Plaintiffs must plead that the director defendants were not merely grossly negligent or even lacking in good faith, but engaged in intentional misconduct or a knowing violation of the law.

The Complaint is devoid of any allegations that any of the director defendants engaged in intentional misconduct or a knowing violation of the law—the only relevant bases for director liability under Washington law. The Complaint does not allege that any of the director defendants intended to violate the law. Indeed, how could they have so intended when the Company had entered into an advanced pricing agreement ("APA") with the Dutch government

---

[7] Thus, Washington's law embodies the modern trend that "a corporate director's conflicting interest in a transaction is addressed in MBCA sections 8.60-8.62 [codified at WBCA 08.700-7.30]." Robert A. Kutcher, *Breach of Fiduciary Duties in Business Torts Litigation* 1, 5 (ABA 2004) (contrasting MBCA approach with historical approach wherein "a director's duty of loyalty to a corporation has been defined by jurisprudence rather than by statute").

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

1 that expressly agreed that the Company's tax policy was legal, and in fact endorsed, by the Dutch

2 government? There is no allegation that any director knew that the Company's European Union

3 tax policy violated EU law. Again, how could they have known prior to the EC Decision in

4 October 2015? Even now, it is unclear if the APA violated EU law since the Dutch have

5 appealed the EC Decision.[8]

## III. THE STATUTE OF LIMITATIONS ON PLAINTIFFS' CLAIMS HAS EXPIRED

7 The statute of limitations for Plaintiffs claims' is three years. RCW 4.16.080(2); *Hudson*

8 *v. Condon*, 101 Wn. App. 866, 872-73, 6 P.3d 615, 619 (2000) (claims for breach of partnership

9 duties); *SPEAA v. Boeing Co.*, 139 Wn.2d 824, 838, 991 P.2d 1126 (2000) (unjust enrichment).

10 Causes of action accrue when a plaintiff knows or through reasonable diligence should know

11 facts establishing all the essential elements of the action. *Janicki Logging & Constr. Co. v.*

12 *Schwabe, Williamson & Wyatt, P.C.*, 109 Wn. App. 655, 659-60, 37 P.3d 309 (2001). Plaintiffs

13 allege that the underlying wrongful conduct—creation and maintenance of Starbucks' allegedly

14 risky European tax policy that included Dutch and Swiss subsidiaries and APA with the

15 Netherlands, which Plaintiffs claimed "occurred under the defendants' direction and on their

16 watch"—was in full swing by the year 2009. Compl. ¶ 4; *see also id.* ("Starbucks' tax avoidance

17 scheme . . . was so effective [that] … between 2009 and 2012 Starbucks paid no corporate tax in

18 the UK"). And Plaintiffs allege that Starbucks had suffered damage in the form of declining UK

19 sales by December 6, 2012. Compl. ¶ 5 ("public outcry and protests led to a decline in British

20 sales" by December 2012). As such, all elements of Plaintiffs' claims had accrued by that date.

21 Moreover, there can be no doubt that Starbucks' European tax policy was public knowledge, and

22

23 [8] Plaintiffs' claims for unjust enrichment also fail because Plaintiffs have not stated a claim under the WBCA. *See* RCW 23B.08.300(4) ("[a] director is *not* liable for *any action* taken as a director . . . if the director performed the duties of the director's office in compliance with [RCW 23B.08.300].") Even if this were not so, the Complaint

24 also fails to make even a cursory attempt to make out the basics of an action for unjust enrichment. It does not identify any benefit conferred on any of the Defendants or that it would be inequitable for them to retain one, as

25 required by Washington law. *See Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991); *see also See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 2013 U.S. Dist. LEXIS 59783, at

26 *45 (S.D.N.Y. Apr. 25, 2013) ("Because [plaintiff's] unjust enrichment claim is premised on defendants' violation of their fiduciary duties, and the breach of fiduciary duty claim is dismissed, [plaintiff's] unjust enrichment claim is dismissed as well.").

27

therefore discoverable through reasonable diligence, by December 2012 since Plaintiffs cite to news articles from that time, which are in turn based on information that became public during and before a highly publicized UK parliamentary hearing in November 2012. Compl. ¶¶ 3-6. As such, the statute of limitations on Plaintiffs' claims expired no later in time than December 5, 2015. Plaintiffs did not file their Complaint until October 2016. Their claims must be dismissed for this reason alone.

## IV. PLAINTIFFS' RELIANCE ON COLLECTIVE ALLEGATIONS IS IMPERMISSIBLE

"[I]n order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each individual defendant is charged." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1248 (3d ed. 2015). Pleadings "in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong" are impermissible. *Sollberger v. Wachovia Secs, LLC*, 2010 U.S. Dist. LEXIS 66233, at *12 (C.D. Cal June 30, 2010).

Thus, "each director has a right to be considered individually when the directors face claims for damages in a suit challenging board action." *In re Cornerstone Therapeutics*, 115 A.3d 1173, 1182-83 (Del. 2015); *cf. In re ITT Corp. Deriv. Litig.*, 653 F. Supp. 2d 453, 465 (S.D.N.Y. 2009) (dismissing a derivative complaint for failure to "plead[] specific facts on a director-by-director basis, demonstrating what each Director knew and when, and specifically what action, if any, each Director took or failed to take in response"); *Ramziddin v. Monmouth Cty. Sheriff Dep't*, 2010 U.S. Dist. LEXIS 42798, at *20 (D.N.J. Apr. 30, 2010) ("in a complaint such as this asserting many claims against many defendants, it is not sufficient to identify the defendants in the beginning of the pleading and then fail to tie the factual allegations to the individual defendants alleged to be liable").

Thus, in the present case Plaintiffs must plead facts that each director defendant engaged in intentional misconduct or a knowing violation of the law, or, as to the non-director defendants,

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

failed to act in accordance with the WBCA standards. *See* RCW 23B.08.320, RCW 23B.08.420; *REFCO Grp. Ltd., v. Cantor Fitzgerald, L.P.*, 2014 U.S. Dist. LEXIS 79708, at *67 (S.D.N.Y. June 10, 2014) ("[W]hen intentional misconduct . . . is the standard at issue . . . some showing of the requisite mental state is necessary for the defendant to be liable."). And under the business judgment rule the "individualized consideration [of each director] does not start with the assumption that each director was disloyal; rather, independent directors are presumed to be motivated to do their duty with fidelity." *Cornerstone*, 115 A.3d at 1182-83 (citations omitted). Plaintiffs make no individualized allegations concerning any Defendant, much less an allegation sufficient to overcome the business judgment presumption to which Defendants are entitled. Thus, absent specific allegations as to any defendant, Plaintiffs' claims must be dismissed. *See REFCO*, 2014 U.S. Dist. LEXIS 79708, at *68-69 (when Plaintiff offers only "conclusory assertions of liability" directors' decision making process is assumed to be valid).

Moreover, the lack of individualized allegations leaves the Defendants with substantial uncertainty as to what conduct alleged in the Complaint (spanning a period from 1998 until October 21, 2015, ¶¶ 52, 66) Plaintiffs seek to hold each Individual Defendant liable for, if any. The Complaint therefore "fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Nissen v. Lindquist*, 2017 U.S. Dist. LEXIS 480, at *4 (W.D. Wash. Jan. 3, 2017) quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

For example, Plaintiffs have named Ms. Dillon as a defendant, despite the fact that she joined Starbucks' Board in January 2016 (Compl. ¶ 36), long after the allegedly wrongful conduct. Conversely, Mr. Alstead ceased to have any active role at Starbucks in March 2015, before the EC concluded its investigation and announced its Decision. Compl. ¶¶ 8, 29, 66. Defendants Gates (joined 2012), Shih (joined 2011), Teruel (joined 2005), Hobson (joined 2005), and Ullman (joined 2003) were members of the Starbucks Board for only a portion of the period of the alleged wrongdoing. Compl. ¶¶ 35-40. Despite this wide variation in the periods of service of each of the director defendants, however, Plaintiffs make no attempt to specify which

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

director is responsible for which allegedly wrongful act. And Mr. Schultz and Mr. Maw occupied different roles with differing responsibilities at the Company during the relevant period. Compl. ¶¶ 28, 30. Mr. Maw, for example, has served as the Company's Chief Financial Officer, Vice President of Corporate Finance, and Controller since joining the Company in 2011. Compl. ¶ 30. But Plaintiffs do not connect the responsibilities of any of these roles to any allegations in the Complaint or any alleged action by Mr. Maw.

## V. PLAINTIFFS' ALLEGATIONS OF INADEQUATE OVERSIGHT OF THE COMPANY'S EUROPEAN TAX POLICY ARE CONCLUSORY AND DEMONSTRABLY INCORRECT

Plaintiffs also allege that Defendants failed to exercise adequate oversight and management of the Company's EU tax policy by "ignor[ing] the obvious and pervasive problems with Starbucks' corporate tax structures in the EU" and failing to correct these alleged problems.[9] Compl. ¶ 94. Thus, Plaintiffs' allegations rest on a theory of inadequate oversight, a theory developed under Delaware law and noted by the Delaware courts as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see also id.* (citing *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049 (Del. Ch. 1996) ("For "good policy reasons," it is "difficult to charge directors with responsibility for corporate losses for an alleged breach of care, where there is no conflict of interest or no facts suggesting suspect motivation.")

For this reason, a plaintiff seeking to state a claim for inadequate oversight "must plead facts sufficient to establish board involvement in *conscious wrongdoing*." *South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012) (emphasis added). They may do so by sufficiently alleging that Defendants "knowingly caus[ed] or consciously permit[ted] the corporation to violate positive law," or (2) "fail[ed] utterly to attempt to establish a reporting system or other oversight mechanism to monitor the corporation's legal compliance." *Id.* "[O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a

---

[9] Plaintiffs' allegation that Defendants' created the Company's European tax structures, Compl. ¶ 98 is completely conclusory since the Complaint makes no allegations whatsoever concerning who participated in the creation of these tax structures. It should be disregarded.

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." *In re Caremark*, 698 A.2d at 971. And when Defendants have implemented a reporting system, Plaintiffs must plead that Defendants "consciously failed to monitor or oversee its operations thus disabling themselves from being informed of the risks or problems requiring their attention." *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

Analysis of this standard on a motion to dismiss thus focuses on whether the <u>processes</u> by which Defendants exercised oversight were flawed. As the Delaware Court of Chancery has observed, evaluation of claims in which:

> [P]laintiff shareholders attempt[] to hold the director defendants personally liable for making (or allowing to be made) business decisions that, in hindsight, turned out poorly for the Company . . . . . *properly focus on the decision-making process rather than on a substantive evaluation of the merits of the decision*. This follows from the inadequacy of the Court . . . to properly evaluate whether corporate decision-makers made a "right" or "wrong" decision. . . . [T]he business judgment rule prevents a judge or jury from second guessing director decisions if they were the product of a rational process and the directors availed themselves of all material and reasonably available information.

*In re Citigroup S'holders Deriv. Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009) (emphasis added). Here, the Complaint dwells at great length upon the alleged bad *results* of decisions Defendants allegedly made regarding Starbucks' European tax policy, such as the UK parliamentary inquiry and the EC Decision. However, the Complaint is devoid of any allegations whatsoever concerning the Company's decision *process*. It simply states that Defendants' "actions could not have been a good faith exercise of prudent business judgment," but provides no reason why that is so. Compl. ¶¶ 96, 98. Thus, viewed in the most favorable light, the Complaint makes a claim that the Defendants misjudged the risks associated with the Company's European tax policy, but this is not sufficient to state a claim because judicial review of a business decision is foreclosed by the business judgment rule. *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) ("[T]here is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties.")

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

In fact, the Complaint alleges that Starbucks *had* put in place monitoring processes. Compl. ¶ 46 ("the Board, in general, and the Audit Committee, in particular, have specifically adopted numerous internal policies and procedures to ensure that the Company is purportedly run lawfully worldwide.") And Plaintiffs' allegations and documents show that the Defendants kept apprised of facts relevant to the Company's European tax policy. For example, documents relied on by Plaintiffs show that the Board's audit committee reviewed information concerning the Company's European tax policy at meetings in June 5, 2012 and March 18, 2014. Compl. ¶¶ 49-51 & n.9-12. Thus, Plaintiffs have simply not alleged any deficiency in Defendants' oversight of the Company's European tax policy, much less one that amounts to "conscious wrongdoing." *Baker*, 62 A.3d at 6.

In fact, the Complaint does not make any non-conclusory allegations concerning the risks of Starbucks' tax practices, much less that such risks were known to Defendants. The Complaint does not allege that Defendants believed that these practices were particularly risky (indeed, Starbucks' peers use similar tax structures) or that these practices carried an unusually high risk of regulatory action or damage to Starbucks' reputation. DEx. 2. And to the extent Starbucks endured regulatory scrutiny in the European Union, this was due to widespread changes in the regulatory environment that effected many other large companies. DEx. 3 (noting EC's "wider inquiry into tax rulings"). And Plaintiffs do not allege that Starbucks had any reason to doubt the validity of the Company's Dutch APA, which had existed since 2008 prior to the launch of the EC investigation in June 2014.

The Complaint's attempt to buttress its insufficient allegations with vague claims of illegality is unavailing. As discussed in the Company's concurrently filed brief in support of its Rule 23.1 motion to dismiss, the Complaint mischaracterizes the UK parliamentary inquiry and the EC Decision. Starbucks' Motion (ECF No. 16) at Section IV.A. The fact of the matter is that Starbucks has not been accused of violating EU tax law by any European authority. And even if the Company had engaged in improper tax avoidance practices in Europe, the

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT    -13-
CASE NO.: CV16-1580-RAJ

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

1 Complaint's allegations would remain deficient because they do not show any connection
2 between the alleged misconduct and inadequate oversight by the Board.

3 **VI.  PLAINTIFFS' VAGUE DISCLOSURE CLAIMS DO NOT SATISFY RULE 9(B)**

4 Plaintiffs claim that all of the Company's SEC Form 10-K filings since 2008 have been
5 false and misleading.  Compl. ¶ 96.  As explained above, these allegations sound in fraud and
6 must satisfy the particularity requirements of Rule 9(b).  To satisfy Rule 9(b), "the complaint
7 must both identify the allegedly fraudulent statement and explain why it was false when made."
8 *In re Metro. Secs. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007) (citation omitted).  It
9 also "must identify the individual who made the alleged representation and the content of the
10 alleged representation."  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1151 (C.D.
11 Cal. 2007).  A "shotgun" complaint that requires "the defendant and the court to match the
12 statements up with the reasons they are false or misleading" does not satisfy Rule 9(b).  *Metro.*
13 *Secs.,* 532 F.Supp.2d at 1279 (internal quotation marks and citations omitted).

14 Plaintiffs do not identify the particular statements in the Company's 10-Ks that are
15 allegedly false, or even which of the nine 10-Ks Starbucks has filed since its FY 2008 contain
16 false statements.  It does not link any allegedly false statement to any particular Defendant.
17 *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to
18 lump multiple defendants together but requires plaintiffs to differentiate their allegations when
19 suing more than one defendant.") (citations omitted).  It does not allege facts that might
20 demonstrate that any Defendant intended to mislead, and its allegation that "Defendants caused
21 the Company" to file false form 10-Ks, Compl. ¶ 69, is exactly the type of general averment that
22 does not satisfy Rule 9(b).  *In re China Auto. Sys., Inc. Deriv. Litig.*, 2013 WL 4672059, at *8
23 (Del. Ch. Aug. 30, 2013) ("A mere statement that the Defendants 'caused' the filing of the
24 allegedly misleading financial statements with the SEC is not, without more, a particularized
25 allegation of fact.")  The Complaint also does not explain why any specific statement in any 10-
26 K is false at all.

27

**WILSON SONSINI GOODRICH & ROSATI**, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

The closest the Complaint comes to a non-conclusory allegation is its claims that Starbucks' 10-Ks were misleading because (1) they failed to disclose the pendency of the EC investigation and (2) they did not disclose approximately $34 million tax liability resulting from the EC Decision. Compl. ¶¶ 74-75. Plaintiffs claim that excerpts of Starbucks' consolidated FY 2014 earnings statement (filed on November 14, 2014) exemplify this flaw, apparently because they believe that the $1.092 billion in income tax the Company reported paying worldwide did not include the $34 million EU assessment. To begin, with the 10-K earnings statement records the amount of tax the company actually paid in 2014, and as a result it was entirely accurate— Plaintiffs do not claim that the company paid or owed Dutch back taxes in FY 2014.[10] *See* Reg. S-X, 14 C.F.R. 210.4-08(h). More fundamentally, however, the $34 million tax liability associated with the EC Decision was not even announced until October 21, 2015, so there was no tax liability associated with the EC Decision during FY2014 for the company to disclose. Compl. ¶ 2. Neither was it improper that the Company's FY 2014 10-K did not mention the EU investigation. When the 10-K was filed in November 2014, the EC investigation had been public knowledge since the EC announced it with a press release in June 2014, but had not reached any determinations. Compl. ¶ 63. Plaintiffs also do not offer any reason why the Company had a duty to disclose the investigation, which was public knowledge.

Additionally, the $34 million tax liability was not material next to the $3 billion in taxes Starbucks had paid over the same time. DEx. 8 at 87 ("The exposure amount is not material…."). As a result, even if the Defendants could have predicted the result of the EC Decision (Plaintiffs do not allege that they did), failure to disclose the liability could not have been "*materially misleading*" as Plaintiffs contend. Compl. ¶ 96. The foregoing is equally true of the Company's FY 2013 Form 10-K.

Plaintiffs' contention that the Company's SEC filings for FY 2008-12 and FY 2015 are misleading is weaker still: during the earlier period, the EU investigation had not even been

---

[10] The Company's FY 2015 10-K disclosed the Decision and noted that the its impact would fall in its FY2016 tax provisions because the Company learned of the EC Decision after the end of the Company's fiscal year. DEx. 8 at 87.

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

announced while the FY 2015 10-K disclosed exactly the information the Plaintiffs claim it did not.  *See* Compl. ¶ 69 ("[T]he Forms 10-K Defendants caused the Company to file with the SEC *since 2008* have been false and misleading.") (emphasis added).[11]

## VII.  PLAINTIFFS HAVE NOT SUFFICIENTLY PLED DAMAGE TO STARBUCKS

Plaintiffs make a conclusory assertion that Starbucks has been damaged by Defendants' alleged violation of their duties as directors and officers.  However, Plaintiffs' blanket claim that the Company suffered damage to its "corporate reputation and goodwill" is impermissibly non-specific because "lost goodwill and business reputation damage allegations must be more than speculative and conclusory." *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006).  The only specific allegation of damage to the Company's reputation in the Complaint is that the Company's revenues declined in the United Kingdom during the year 2013 as a result of public criticism of its tax practices after the parliamentary hearing.

However, claims against a company's management and directors for damage to the company's reputation "must be shown to flow directly from the wrongful acts of defendants." *In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 517 (E.D.N.Y. 1991); *Dollens v. Zionts*, 2002 U.S. Dist. LEXIS 13511, at *28 (N.D. Ill. July 22, 2002) (same); *see also In re United Telecomms. Sec. Litig.*, 1993 U.S. Dist. LEXIS 4749, at *8–9 (D. Kan. Mar. 4, 1993) (bare allegation that defendants' acts harmed company's reputation insufficient).  In this case, the wrongful acts Plaintiffs allege in connection with the UK are the supposed failure to adequately oversee the Company's European tax policy.  Plaintiffs do not deny that the tax structures inured to the substantial financial *benefit* of the Company by reducing the Company's tax burden in Europe by tens of millions of dollars.[12]  The reputational harm Plaintiffs allege the Company suffered in the UK, however, was the result of negative publicity concerning these tax structures,

---

[11] The Complaint also alleges that in addition to SEC filings Defendants caused the "Company to disseminate to Starbucks' shareholders materially misleading and inaccurate information through. . .  press releases, conference calls, and other public statements and disclosures as detailed herein."  Compl. ¶ 96.  Contrary to this assertion, the Complaint contains no discussion at all of these other categories of supposedly misleading information.

[12] Documents upon which Plaintiffs rely quantify the tax savings to the company derived from its Europe Middle East and Africa and UK tax structures.  Ex. G to PEx C at 13.

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT                    -16-
CASE NO.: CV16-1580-RAJ

**WILSON SONSINI GOODRICH & ROSATI, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

not of the tax structures themselves. Thus, the reputational damage Plaintiffs claim did not flow directly from Defendants supposedly wrongful acts (which actually benefitted the Company). As the Seventh Circuit has observed when interpreting RICO's substantially similar requirement of direct damage from allegedly wrongful acts, reputational damage to a company stemming from acts of its directors is not imposed directly on the Company because such damages "pass through many intermediaries, both identified and unidentified." *Mendelovitz v. Vosicky,* 40 F.3d 182, 185 (7th Cir. 1994). The Seventh Circuit observed that reputational damages do not flow directly from wrongful acts because they require "actions and decisions by third parties before coming into being." *Id.* As in *Mendelovitz,* the "unidentified, and for the most part unidentifiable, intermediaries include customers that . . . because of the 'scandal,' decided not to do business with" Starbucks. *Id.* As such, Plaintiffs' allegations of damage to the Company's goodwill impermissibly seek to assert damages that do not flow from the wrongful acts of which they complain.

Moreover, the Supreme Court has noted, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes v. Sec. Inv'r Protection Corp.*, 503 U.S. 258, 269, 272, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). Thus, determining to what extent Starbucks' sales "were or will be harmed by [Defendants'] allegedly illegal actions would be at best an enormously complex, and at worst a futile, endeavor." *Mendelovitz*, 40 F.3d at 185. Plaintiffs' claim of reputational damage is therefore impermissibly speculative and vague, especially in light of the quantifiable and concrete benefit Starbucks reaped from its European tax structures. *See Cray,* 431 F. Supp. 2d at 1134 (claim that defendant received less favorable credit terms due to reputational harm vague because it failed to identify specific fees, rates or terms impacted by reputation).[13]

---

[13] Finally, Plaintiffs' damages claims depend in on the outcome of the Netherlands' pending appeal of the EC Decision and thus are speculative because they turn on the outcome of a pending case. *See In re United Telecomms. Sec. Litig.*, 1993 U.S. Dist. LEXIS 4749, at *11 (because "the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.")

WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

To the extent that Plaintiffs seek to recover the $34 million Dutch tax assessment resulting from the EC Decision, the Company has not been damaged by this assessment because the assessment seeks to have Starbucks pay the taxes the EC claims it would have otherwise owed.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that this Court dismiss the complaint.

Dated: January 19, 2017

s/ Barry M. Kaplan
Barry M. Kaplan, WSBA #8661
Gregory L. Watts, WSBA #43995
Elon Slutsky, WSBA #50104
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
Email: bkaplan@wsgr.com
Email: gwatts@wsgr.com
Email: eslutsky@wsgr.com

*Attorneys for Defendants*

INDIVIDUAL DEFS' MOTION TO DISMISS COMPLAINT
CASE NO.: CV16-1580-RAJ
-18-
WILSON SONSINI GOODRICH & ROSATI, PC
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2017, I filed the foregoing with the Clerk of the Court using the CM/ECF system, and served all parties via ECF.

Dated: January 19, 2017

s/ Barry M. Kaplan
Barry M. Kaplan, WSBA #8661

CERTIFICATE OF SERVICE
CASE NO.: CV16-1580-RAJ

**WILSON SONSINI GOODRICH & ROSATI, PC**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699