HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID V. MYERS and SHIVA Y. STEIN, derivatively on behalf of STARBUCKS CORPORATION,

    Plaintiffs,

v.

TROY ALSTEAD, MARY N. DILLON, ROBERT M. GATES, MELLODY HOBSON, KEVIN R. JOHNSON, SCOTT MAW, JOSHUA COOPER RAMO, HOWARD SCHULTZ, JAMES G. SHENNAN, JR., CLARA SHIH, JAVIER G. TERUEL, MYRON E. ULLMAN, III, CRAIG E. WEATHERUP,

    Defendants,

and

STARBUCKS CORPORATION,

    Nominal Defendant.

CASE NO. C16-1580 RAJ

ORDER

ORDER- 1

## I. INTRODUCTION

This matter comes before the Court on Nominal Defendant Starbucks Corporation's ("Starbucks") and the Individual Defendants' Motion to Dismiss Complaint for Breach of Fiduciary Duties and Unjust Enrichment. Dkt. ## 15, 16. The Court is also in receipt of Defendants' unopposed Request for Judicial Notice. Dkt. # 18. Having reviewed the briefs submitted by the parties[1] and the relevant portions of the record, the Court finds oral argument unnecessary. For the reasons that follow, the Court **GRANTS** Starbucks' Motion and the Request for Judicial Notice, and terminates the Individual Defendants' motion as **MOOT**.

## II. BACKGROUND

Plaintiffs are shareholders of Starbucks. Based on media reports, Plaintiffs allege that Starbucks underpaid its taxes in the European Union (EU) between 1998 and 2012. Dkt. 4-3 (Complaint) at ¶ 52. The United Kingdom's Parliament inquired into Starbucks' EU tax structure "to understand why [Starbucks doesn't] pay the corporate tax that it appears, on the facts, is due." *Id*. at ¶ 54. On December 6, 2012, Starbucks announced to the London Chamber of Commerce that it would resolve the issue by paying ten million pounds each year for 2013 and 2014. *Id*. at ¶ 60.

Separately, Starbucks had entered into an advanced pricing agreement ("APA") with the Netherlands. *Id.* at ¶ 62. The APA established how Starbucks was to calculate its taxes due to the Netherlands over the course of ten years. In July 2013, the European Commission ("Commission") began an investigation into the APA on

---

[1] The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

suspicion that the agreement was in violation of anti-competition prohibitions. *Id.* at ¶ 62. The investigation became public on June 11, 2014 when the Commission confirmed that "it had opened a formal, in-depth investigation into the corporate structure of Starbucks in the Netherlands[.]" *Id.* at ¶ 63.

On October 21, 2015, the Commission "issued a decision finding that Starbucks' APA with the Dutch tax authorities artificially lowered tax[es] paid by its subsidiary . . . ." *Id.* at ¶ 66. The Commission considered the APA to be in violation of Article 107(1) of the Treaty of Functioning of the European Union, which prevents member states, such as the Netherlands, from giving corporations unfair competitive advantages. *Id.* As a result, the Commission ordered the Netherlands to collect thirty (30) million euros from Starbucks. *Id.* at ¶ 67. The Netherlands appealed the decision. *Id.* at ¶ 68.

Based on the tax schemes that led to Starbucks' payouts to the EU and the Netherlands, Plaintiffs issued demand letters (the "Demands") to the Starbucks' Board of Directors ("Board") "to investigate and commence an action against certain current and/or former directors and executive officers of the Company." *Id.* at ¶ 79. The Board considered the letters and relevant documents, and discussed the Demands at two Board meetings and an executive session. *Id.* at ¶ 80, Ex. C. On May 24, 2016, the Board refused the Demands. *Id.*

Plaintiffs were unsatisfied with the Board's investigation and subsequent refusal and brought this action on behalf of Starbucks, alleging that the Board breached their fiduciary duties and were unjustly enriched as a result. *Id.* at ¶¶ 88-104. Defendants now move the Court to dismiss the lawsuit.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders*

*v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**IV. DISCUSSION**

A. <u>Standing Under Federal Rule of Civil Procedure 23.1</u>

To maintain a shareholder derivative lawsuit, a plaintiff must allege that she "was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on [her] by operation of law[.]" Fed. R. Civ. P. 23.1(b)(1). This is known as the contemporaneous ownership rule and is aimed at preventing "prospective plaintiffs from purchasing shares in a corporation with an eye to filing a derivative suit." *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1009 (N.D. Cal. 2007) (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 n.6 (1984)).

Some courts recognize a narrow exception[2] to the contemporaneous ownership rule that affords a shareholder standing in "unusual situations, such as where a plaintiff acquires his stock after a particular transaction has begun but before it is completed[.]" *In re CytRx Corp. Stockholder Derivative Litig. II*, 2017 Del. Ch. LEXIS 27, *9 (Del. Ch. Feb. 22, 2017); *see also Conrad v. Blank*, 940 A.2d 28, 41 (Del. Ch. 2007) (finding that Delaware courts "strictly interpret" the contemporaneous ownership rule but recognize exceptions "so as not to prevent reasonable opportunities to rectify corporate aberrations.") (internal quotations and citations omitted). However, the exception—referred to as the continuing wrong doctrine—"does not bestow standing upon a stockholder to challenge transactions occurring before he bought his stock simply because they are similar or related to transactions or other conduct that occurred later." *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007).

While some courts recognize this exception, others have rejected it as an impermissibly expansive reading of the term "transaction" as it appears in Rule 23.1. *See In re Bank of New York Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) (rejecting the expansive interpretation of "transaction" inherent in the continuing wrong doctrine and finding that "a plaintiff must have owned stock in the corporation *throughout* the course of the activities that constitute the *primary basis* of the complaint."). These courts read Rule 23.1's standing requirement to mean that "a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." *Id*. at 298. This strict interpretative approach prevents a plaintiff from buying into a corporation with knowledge of

---

[2] Plaintiffs' argument in favor of this exception is relegated to a footnote in their Opposition. Dkt. # 20 at 26. When parties leave arguments in footnotes, it suggests to the Court that the arguments do not hold much weight. Moreover, by including such an important analysis in a footnote, the Plaintiffs have essentially flouted this Court's page requirement. In the future, the Court may exercise its discretion to ignore any arguments that are flippantly included in footnotes rather than in the body of the brief.

potential wrongdoing so that she may maintain a lawsuit. *See id.* at 298 ("Accordingly, in determining whether to grant derivative standing to a proposed plaintiff who acquired stock in the midst of the alleged wrongdoing, courts have often considered the policies underlying the contemporaneous ownership doctrine and have been particularly influenced by whether the proposed plaintiff knew of the wrongful conduct before purchasing his or her shares."); *Bateson v. Magna Oil Corp.*, 414 F.2d 128, 131 (5th Cir. 1969) ("[A] stranger to the corporation who buys stock with knowledge of the alleged wrongs may not maintain a derivative action even if the wrongs complained of are continuing wrongs . . . ."); *Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 652 (D. Del. 1990) ("As a matter of policy, one who buys shares with knowledge of a purported wrongdoing should not be permitted to bring suit to challenge that wrongdoing.").

In their Complaint, Plaintiffs allege two distinct sets of wrongdoing. The first set alleges Starbucks underpaid taxes in the EU between 2008 and 2012. Dkt. # 4-3 (Complaint) at ¶ 52. Plaintiffs state that the United Kingdom's Parliament conducted an inquiry into Starbucks' taxes that resulted in Starbucks agreeing to pay ten million pounds each year for 2013 and 2014. *Id.* at ¶¶ 54, 60. Starbucks announced this agreement on December 6, 2012. *Id.* at ¶ 60. According to Plaintiffs' Complaint, any wrongdoing associated with underpaid taxes in the EU ended in 2012. Moreover, the settlement and payment schedule was well-known to the public by the end of 2012. Plaintiffs concede that they did not own stock in Starbucks until October 2013 and June 2014, respectively. *Id.* at ¶¶ 25, 26. As such, Plaintiffs did not hold stock in Starbucks during the relevant period and therefore fail to satisfy their standing burden under Rule 23.1 with regard to these allegations. The Court dismisses with prejudice any claims based on this set of allegations.

Plaintiff's second set of allegations is related to Starbucks' 2007 APA with the Netherlands. Dkt. # 4-3 (Complaint) at ¶ 62. The APA was a tax ruling that defined

how Starbucks would calculate its taxes due to the Dutch government over the course of ten years. *Id.*; *see also* Dkt. # 15 (Motion) at 8. In July 2013, the Commission began investigating the APA due to suspicions that it might be in violation of Article 107(1) of the Treaty on the Functioning of the European Union, which prevents states from acting to distort or threaten to distort competition. Dkt. # 4-3 (Complaint) at ¶ 62. On June 11, 2014, the Commission made a public announcement confirming its formal, in-depth investigation into the corporate tax structure of Starbucks in the Netherlands. *Id.* at ¶ 63. On October 21, 2015, the Commission issued a decision finding the APA artificially lowered taxes and was aimed at giving Starbucks an unfair competitive advantage. *Id.* at ¶ 66. As a result, the Commission ordered the Dutch government to collect additional taxes from Starbucks amounting to 30 million euros. *Id.* at ¶ 67. The Netherlands appealed this decision to the General Court of the European Union; the appeal is pending. *Id.* at ¶ 68.

Plaintiffs became shareholders in the midst of the Commission's investigation into Starbucks' APA with the Netherlands. *Id.* at ¶¶ 25, 26. The Court is inclined to apply the continuing wrong doctrine to the APA and its post-2007 effects, but is suspicious of Plaintiffs' timing in buying into Starbucks—both plaintiffs became shareholders after the investigation into the APA had already begun and was known to the public. This is a close case. Nonetheless, the Court finds that Plaintiffs have standing to bring this derivative lawsuit based on the allegations related to the APA.[3]

B. <u>Business Judgment Rule</u>

After the Commission handed down its decision with regard to the APA, Plaintiffs made pre-suit Demands on the Board of Starbucks to "investigate and commence an action against certain current and/or former directors and executive

---

[3] Though the Court concludes that Plaintiffs have standing to pursue these allegations, the Court makes no comment on whether Starbucks has engaged in any "corporate aberrations." *See Conrad*, 940 A.2d at 42.

officers of" Starbucks. Dkt. # 4-3 (Complaint) at ¶ 79. The Board refused the Demands. *Id.* at ¶ 80.

The Court reviews the Board's decision to refuse the Demands under the business judgment rule. The business judgment rule is a rebuttable "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (citations omitted).[4] "Absent an abuse of discretion, that judgment will be respected by the courts." *Id.*; *see also Zapata Corp. v. Maldonado*, 430 A.2d 779, 787 (Del. 1981) ("If a 'committee, composed of independent and disinterested directors, conducted a proper review of the matters before it, considered a variety of factors and reached, in good faith, a business judgment that (the) action was not in the best interest of (the corporation)', the action must be dismissed.") (citations omitted); *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971) ("A board of directors enjoys a presumption of sound business judgment, and its decisions will not be disturbed if they can be attributed to any rational business purpose. A court under such circumstances will not substitute its own notions of what is or is not sound business judgment."). The party challenging the Board's decision has the burden to establish facts that rebut this presumption. *Aronson*, 473 A.2d at 812.

When reviewing the Board's decision, the Court inquires "into the procedures employed by the board in making its determination." *Barovic v. Ballmer*, 72 F. Supp. 3d 1210, 1215 (W.D. Wash. 2014) (quoting *In re PSE & G Shareholder Litigation*,

---

[4] In a shareholder derivative action brought in federal court based on diversity jurisdiction, the Court applies the substantive law of the state of incorporation. Starbucks is incorporated in Washington. Washington courts often look to Delaware courts for guidance on issues that arise in shareholder derivative suits.

173 N.J. 258, 291 (2002)). There is "no prescribed procedure that a board must follow." *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Generally, however, the Court will analyze whether the Board fulfilled their "duty to inform themselves of all material information reasonably available to them." *Barovic*, 72 F. Supp. 3d at 1215 (citing *Mt. Moriah Cemetery on Behalf of Dun & Bradstreet Corp. v. Moritz*, 1991 WL 50149, at *4 (Del.Ch., Apr. 4, 1991)); *see also Zapata Corp.*, 430 A.2d at 797 ("The issues become solely independence, good faith, and reasonable investigation.").

Plaintiffs allege that the Board failed to undertake any investigation into the Demands. Dkt. # 4-3 (Complaint) at ¶ 82.[5] This conclusion is belied by the refusal letter attached to the Complaint. Dkt. # 4-3 at 58-61. The refusal letter explains that the Board at least reviewed

> Copies of both demand letters, the materials attached to those demand letters, copies of prior board and audit committee minutes and presentations concerning the Company's European Union corporate structure and corporate tax strategy, news reports and press releases, a transcript of certain testimony before the House of Commons Committee of Public Accounts, the decision by the European Commission, and the subsequent appeal by The Netherlands.

*Id.* at 59. The Board discussed the Demands at two separate Board meetings and an executive session. *Id.* at 59-60. During the first meeting, the Board questioned Starbucks' CFO, corporate counsel, senior vice present of Global Responsibility &

---

[5] The Court notes that Plaintiffs argue in their Complaint that the Defendants did not undertake an investigation. However, the Plaintiffs essentially concede throughout their Opposition that Defendants *did* conduct an investigation, albeit an "unreasonable" one. *See*, *e.g.*, Dkt. # 20 at 10.

ORDER- 9

Public Policy, vice president of Tax & Customs, and Starbucks' outside counsel. *Id.* at 59. Having carefully considered the evidence before it, the Board found that "it would not be in the best interests of the Company for it to institute litigation or bring claims against any persons for the matters raised in the two Demand letters." *Id.* at 61. Based on these facts, the Court finds that the Board undertook a good faith effort to inform themselves of the issues presented by Plaintiffs and conducted a good faith and reasonable investigation into Plaintiffs' Demands. *See City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022, 1028 (N.D. Cal. 2013) (in analyzing a board's refusal, the court found that the "only issues to be decided are the good faith and reasonableness of the board's investigation of the claims articulated in the demand.").

Plaintiffs cite *Barovik v. Ballmer* and *City of Orlando Police Pension Fund v. Page* to emphasize how unreasonable Starbucks' investigation was in this case. But the facts of those cases are immediately distinguishable from the instant matter. In *Barovik*, Microsoft violated a settlement agreement and was fined by the EU as a result. *Barovik*, 72 F. Supp. 3d at 1213. In *Page*, Google admitted to hosting advertisements for controlled substances in violation of US law and was fined by the Government. *Page*, 970 F. Supp. 2d at 1025. Here, Starbucks is not accused of any illegal activity or wrongdoing. The Commissioner's decision targeted the Netherlands' actions in entering into the APA with Starbucks, and the resolution was focused on how the Netherlands could amend the wrongdoing by collecting the underpaid taxes. Dkt. # 17-2 at 103. Therefore, the Court does not find *Barovik* or *Page* instructive here.

Plaintiffs have not met their burden to rebut the business judgment rule's presumption. Accordingly, the Court GRANTS Starbucks' motion and dismisses Plaintiffs' allegations related to the Netherlands' APA without prejudice. The Court GRANTS Plaintiffs leave to amend their Complaint in accordance with this Order. Because the Court concludes that the business judgment rule applies to the Board's

refusal of Plaintiffs' Demands, the Court further finds the Individual Defendants' pending motion MOOT.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Starbucks' Motion to Dismiss. Dkt. # 15. The Court **GRANTS** Defendants' unopposed Request for Judicial Notice. Dkt. # 18. The Court directs the Clerk to terminate the Individual Defendants' pending Motion to Dismiss as **MOOT**. Dkt. # 16.

The Court **GRANTS** Plaintiffs leave to amend their Complaint in accordance with this Order. Plaintiffs have twenty-one (21) days from the date of this Order to amend their Complaint.

Dated this 5th day of September, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge